**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| BOARD OF TRUSTEES OF THE I.A.T.S.E. ANNUITY FUND, BOARD OF TRUSTEES OF THE I.A.T.S.E. NATIONAL HEALTH AND WELFARE FUND, BOARD OF TRUSTEES OF THE I.A.T.S.E. NATIONAL PENSION FUND, AND BOARD OF TRUSTEES OF THE I.A.T.S.E. NATIONAL VACATION FUND, | **COMPLAINT** |
| Plaintiffs, | |
| -against- | Case No. |
| PARADISE SQUARE BROADWAY LIMITED PARTNERSHIP AND PARADISE SQUARE PRODUCTION SERVICES INC., | |
| Defendants. | |

Plaintiffs, Board of Trustees of the I.A.T.S.E. Annuity Fund ("Annuity Fund"), Board of Trustees of the I.A.T.S.E. National Health and Welfare Fund ("Health Fund"), Board of Trustees of the I.A.T.S.E. National Pension Fund ("Pension Fund"), and Board of Trustees of the I.A.T.S.E. National Vacation Fund ("Vacation Fund") (collectively, the "Funds"), by their attorneys, Spivak Lipton LLP, bring this action against Defendants Paradise Square Broadway Limited Partnership ("PS Broadway") and Paradise Square Production Services Inc. ("PSPSI") (collectively, "Defendants" or the "Employer") to collect delinquent employee benefit plan contributions, interest and liquidated damages pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and the Labor Management Relations Act ("LMRA"). Complaining of Defendants, Plaintiffs respectfully allege as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action against Defendants under Sections

502(a)(3), 502(e)(1), and 502(f) of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(e)(1), and 1132(f), and Section 301 of the LMRA, 29 U.S.C. § 185.

2. Venue is proper in the Southern District of New York pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

## PARTIES

3. At all relevant times, Plaintiffs have administered and now administer the Funds.

4. The Pension Fund was established pursuant to a collective bargaining agreement in 1957 and by an Agreement and Declaration of Trust ("Pension Trust Agreement"), which has been amended from time to time thereafter. The Annuity Fund, Health Fund and Vacation Fund were established pursuant to collective bargaining agreements in 1973 and by Agreements and Declarations of Trust (collectively with the Pension Trust Agreement, "Trust Agreements"), which have been amended from time to time thereafter.

5. The Funds are "employee benefit plans" established under Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and within the meaning of Sections 3(3) and 502(d)(1) of ERISA, 29 U.S.C. §§ 1002(3) and 1132(d)(1). The principal place where the Funds are administered is 417 Fifth Avenue, 3rd Floor, New York, New York 10016.

6. At all relevant times, Plaintiffs have been fiduciaries of the Funds. Pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiffs are authorized to enforce the provisions of Title I of ERISA by, among other things, the filing and prosecution of civil claims against those that violate ERISA.

7. The purpose of the Funds is to receive contributions from employers that are parties to collective bargaining agreements with the International Alliance of Theatrical Stage

Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States and Canada ("IATSE") and its affiliated locals, to invest and maintain those monies, to provide annuity, health, pension, and vacation benefits to those qualified to receive them, and to provide the means for financing the operation and administration of the Funds.

8.  Plaintiffs are comprised of an equal number of labor and management representatives in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and are separate legal entities from IATSE and the employers that contribute to them.

9.  Upon information and belief, Defendant PS Broadway was and is a domestic limited partnership organized and existing under the laws of the State of New York, with an office located at 1650 Broadway, Suite 608, New York, New York 10019.  Upon further information and belief, Defendant PS Broadway was engaged in the business of producing the live theatrical show entitled "Paradise Square," and was and is an employer engaged in an industry affecting commerce within the meaning of Sections 3(5), 3(11), 3(12) and 4(a)(1) of ERISA, 29 U.S.C. §§ 1002(5), 1002(11), 1002(12) and 1003(a)(1), and of Sections 2(2), 2(6), and 2(7) of the LMRA, 29 U.S.C. §§ 152(2), 152(6), and 152(7).

10.  Upon information and belief, Defendant PSPSI was and is a domestic business corporation organized and existing under the laws of the State of New York, with its principal place of business at 1650 Broadway, Suite 608, New York, New York 10019.  Upon further information and belief, Defendant PSPSI was engaged in the business of producing "Paradise Square" and was and is an employer engaged in an industry affecting commerce within the meaning of Sections 3(5), 3(11), 3(12) and 4(a)(1) of ERISA, 29 U.S.C. §§ 1002(5), 1002(11), 1002(12) and 1003(a)(1), and of Sections 2(2), 2(6), and 2(7) of the LMRA, 29 U.S.C. §§ 152(2), 152(6), and 152(7).

11. The Broadway League Inc. ("Broadway League") is a multiemployer bargaining association comprised of 700-plus members including theater owners and operators, producers, presenters, and general managers in North American cities.

12. Upon information and belief, at all relevant times, Bernard Abrams ("Abrams") was and is a Producer of live theatrical shows, with a place of business at 1650 Broadway, Suite 608, New York, New York 10019.

13. At all relevant times, Abrams was a Producer of "Paradise Square" and was and is a Producer-member of the Broadway League.

14. Upon information and belief, at all relevant times, Abrams had a controlling interest in each Defendant.

15. Upon information and belief, at all relevant times, Jeffrey Chrzczon was a General Manager of "Paradise Square."

16. Upon information and belief, the Employer produced "Paradise Square" at least in part in Chicago, Illinois in 2021 and on Broadway in New York, New York in 2022. Both the Chicago and Broadway productions of "Paradise Square" are referred to hereafter as the "Production."

17. Upon information and belief, from at least 2021 through July 17, 2022, the Employer performed (or caused its employees to perform) work on the Production.

18. On July 17, 2022, the Production closed to the public.

## FACTS

**Defendants' Obligations to the Funds**

19. At all relevant times, Defendants employed various employees represented by IATSE and the following affiliated locals: IATSE Local 764 ("Local 764"), IATSE Local 798

4

("Local 798"), and United Scenic Artists Local USA 829 ("Local 829") (hereafter IATSE and the three affiliated locals are collectively referred to as the "IATSE Locals").

20. At all relevant times, Defendants were party to collective bargaining agreements between the IATSE Locals and the Broadway League governing the terms and conditions of employment for employees employed on the Production (collectively, "CBAs") because of Abrams' membership as a Producer in the Broadway League and controlling interest in Defendants.

21. Pursuant to the CBAs, the Employer has been obligated at all relevant times to make annuity, health, pension, and vacation contributions to the Funds on behalf of employees of the Employer performing work on the Production.

22. IATSE has at all relevant times been party to a collective bargaining agreement with the Broadway League, with a term from January 1, 2013 through December 31, 2015 extended and modified by memoranda of agreement through July 2, 2023 (together, the "Pink Contract").

23. In September 2021, Defendant PS Broadway and Abrams executed a Project Agreement for Existing League Members with IATSE ("PS Broadway Project Agreement"). The PS Broadway Project Agreement states that Abrams is a member of the Broadway League and has a controlling ownership interest in PS Broadway, PS Broadway will produce a production of "Paradise Square," and PS Broadway is "deemed to be part of" the Broadway League and shall be bound by the Pink Contract.

24. On February 3, 2022, Defendant PSPSI and Abrams executed a Project Agreement for Existing League Members with IATSE ("PSPSI Project Agreement"). The PSPSI Project Agreement provides that Abrams is a member of the Broadway League and has a

5

controlling ownership interest in PSPSI, PSPSI will produce a production of "Paradise Square," and PSPSI is "deemed to be part of" the Broadway League and shall be bound by the Pink Contract.

25. Pursuant to the PS Broadway Project Agreement and PSPSI Project Agreement, the Employer agreed to be bound by the Pink Contract.

26. Under the terms of Article Seven of the Pink Contract, the Employer agreed to contribute:

(a) to the Pension Fund at the rate of $80 per week or $16 per day in any week in which the crew is called to work fewer than four days, which rates may be prorated or modified under the Pink Contract as applicable;

(b) to the Health Fund at the rate of $435 per week or $72.50 per day for each day in any week in which the crew is called to work fewer than four days in 2021; and at the rate of $447 per week or $74.50 per day for each day in any week in which the crew is called to work fewer than four days in 2022, which rates may be prorated or modified under the Pink Contract as applicable;

(c) to the Vacation Fund at the rate of 5% of the weekly salary of stagehands, makeup artists and hairstylists; at the rate of 7% of the weekly salary of wardrobe and personal/star dressers; and in no event less than the minimum amounts specified in the Pink Contract, which amounts may be prorated or modified under the Pink Contract as applicable; and

(d) to the Annuity Fund at the rate of 12.5% of each employee's weekly salary, and in no event less than the minimum amounts specified in the Pink Contract, which amounts may be prorated or modified under the Pink Contract as applicable.

27. Pursuant to Article Seven, Section (6)(b) of the Pink Contract, the Employer agreed to transmit employee salary deferrals to the Annuity Fund.

28. Under Article Seven, Section (7) of the Pink Contract, the Employer agreed to be bound by the Trust Agreements establishing the Funds and to be liable for any attorney's fees and other expenses that may be incurred in collecting contributions due should there be default in payment.

29. Local 764 has at all relevant times been party to a collective bargaining agreement with the Broadway League, with a term from August 28, 2017 through August 30, 2020 that was extended through July 24, 2022 ("Local 764 CBA").

30. Pursuant to Article I(a) of the Local 764 CBA, the Local 764 CBA applies to "Management," which includes any member of the Broadway League. Abrams (as a Producer member of the Broadway League) and Defendants (in which Abrams has a controlling interest) are bound to the Local 764 CBA.

31. Article IX of the Local 764 CBA requires Management to make contributions to the Health Fund at a rate of 12.75% of the gross weekly earnings of each employee covered by the CBA.

32. Local 798 has at all relevant times been party to a collective bargaining agreement entered into by and between the Broadway League "on behalf of its producer-members (hereinafter referred to as 'Management')," with a term from August 7, 2017 through August 9, 2020 that was extended through July 24, 2022 by a side letter dated June 29, 2021 ("Local 798 CBA").

33. Article 9 of the Local 798 CBA requires "Management" to contribute to the Health Fund at a rate of 14.5% of gross earnings for each employee covered by the Local 798

CBA, and to contribute to the Annuity Fund at a rate of 10% of gross earnings for each employee covered by the Local 798 CBA.

34. Local 829 has at all relevant times been party to a collective bargaining agreement with the Broadway League by and on behalf of its Producer members, with a term from January 1, 2019 through December 31, 2022 ("Local 829 CBA").

35. Article XXI of the Local 829 CBA provides that it is "binding on the Employer and any Principal of the Employer and shall so continue, jointly or severally, to be binding, notwithstanding any modifications, reorganization, merger, liquidation, insolvency proceeding or bulk sales of the Employer," and defines "Principal" as "a general partner of a partnership (including any general partner of the general partner); a managing member of a limited liability company (including any managing member or general partner of the managing member); the majority owner of a corporate employer; or a sole proprietorship."

36. Article XXIII of the Local 829 CBA provides that the agreement is binding upon the successors and assigns of the Producer-Employer.

37. Abrams signed a Letter of Adherence for PS Broadway dated August 16, 2021 ("LOA") in which PS Broadway and any principal of PS Broadway agreed to be bound by all the terms and conditions of the Local 829 CBA. The LOA states that it "shall serve as an Agreement between Paradise Square Broadway LP (Employer) and any Principal of the Employer, hereinafter collectively referred to as the Employer or Producer," and further states that the Employer "agrees to accept and be bound by all the terms and conditions of the [Local 829 CBA]."

38. Pursuant to the terms of the LOA and Local 829 CBA, the Employer is bound by the Local 829 CBA.

39. Article XIII of the Local 829 CBA requires the Employer to make contributions to the Annuity Fund at the rate of 4% of the gross earnings of each employee covered by the Local 829 CBA, and to make contributions to the Health Fund at the rate of 14% of the gross earnings of designers, at the rate of 14% of the gross earnings of assistants through January 2, 2022, and at the rate of 14.25% of the gross earnings of assistants as of January 3, 2022, subject to the dollar caps specified in the CBA.

40. Pursuant to Article XIII(A) of the Local 829 CBA, the Employer agrees to be bound by the Trust Agreements establishing the Annuity Fund and the Health Fund.

**Funds' Delinquency Rules**

41. The Trust Agreements provide that any collective bargaining, participation, or other written agreement requiring an employer to make contributions to the Funds shall be deemed to incorporate the terms of the Trust Agreements and by executing or complying with any such agreement the employer is bound to the terms of the Trust Agreements.

42. Under the terms of the Trust Agreements and CBAs, the Employer is bound by the Trust Agreements.

43. Under the terms of the Trust Agreements, the Employer is bound by the terms of the Funds' Policy and Procedures for Collection of Contributions Payable by Employers (collectively, "Delinquency Guidelines").

44. The Trust Agreements and Delinquency Guidelines provide that in the event of a failure to remit the required contributions, the employer shall be obligated to remit interest, liquidated damages, and attorneys' fees. Section 7 of the Delinquency Guidelines for each Fund provides that interest accrues on all late contributions at the rate of prime plus 1%.

45. The Trust Agreements and Delinquency Guidelines authorize the Funds to

conduct audits of the books and records of participating employers in order to determine whether all contributions required under an employer's CBA and applicable laws have been reported and made. Article IX, Section 9.8(d) of the Trust Agreements further provides that the records "of any affiliate, subsidiary, alter ego, joint venture, successor or related company of the Employer (including, where applicable, payroll companies) shall also be made available at all reasonable times for examination and audit by the Fund's Representative."

46. Section 10(b)(i) of the Delinquency Guidelines for each Fund provides that the employer shall be responsible for the cost of the audit where there is a delinquency finding in an amount equal to more than 20% of the contributions paid or remitted by the employer prior to the announcement of the audit for the audit period.

**Delinquent Contributions and Audit**

47. On October 10, 2022, the Funds' auditors issued and sent to the Employer by email a draft Payroll Compliance Inspection report covering the period January 1, 2021 through July 24, 2022 ("Draft Audit Report"). The Draft Audit Report details $215,152.01 in delinquent contributions (including $11,368.43 in delinquent contributions owed for Local 764-represented employees, $25,921.28 in delinquent contributions owed for Local 798-represented employees, $28,712.88 in delinquent contributions owed for Local 829-represented employees, and $140,794.40 in delinquent contributions owed for IATSE-represented employees under the Pink Contract) owed by the Employer for work performed by employees from January 1, 2021 through July 24, 2022. The cover email to the Draft Audit Report invited the Employer to advise of any disputes with the audit findings and to provide documentation in support of any disputes.

48. PS Broadway was listed as the payor on payroll records produced during the audit for work performed in calendar year 2021.

49. PSPSI was listed as the payor on payroll records produced during the audit for work performed in calendar year 2022.

50. The Employer responded to the Funds' auditors and provided additional information relating to the findings for Local 829. Based on information provided by the Employer and certain locals affiliated with IATSE Locals, the principal findings were reduced by approximately $17,050. The Employer also indicated that it agreed with the findings for Local 764 and Local 798.

51. Pursuant to the information provided, on February 27, 2023 the Funds' auditors issued and sent to the Employer by email a Payroll Compliance Inspection report dated February 27, 2023, covering the period January 1, 2021 through July 24, 2022 ("February Audit Report"). The February Audit Report details $198,100.62 in delinquent contributions owed to the Funds, plus interest, audit costs and outstanding delinquencies unrelated to the audit owed by the Employer for work performed by employees represented by the IATSE Locals from January 1, 2021 through July 24, 2022. The cover letter to the February Audit Report requested payment no later than March 17, 2023. To date, the Employer has failed to pay the delinquent contributions and other amounts due to the Funds.

52. On April 5, 2023, the Funds' auditors issued and sent to the Employer by email a revised final Payroll Compliance Inspection report dated April 5, 2023, covering the period January 1, 2021 through July 24, 2022 ("Audit Report"). The Audit Report was revised to separate the amounts owed based on the entity listed on the payroll records. The Audit Report details a total amount of $265,117.12 owed by the Employer for the period January 1, 2021 through July 24, 2022, comprised of the following amounts:

(a) on behalf of employees represented by IATSE, $57,624.88 in delinquent

11

contributions to the Annuity Fund (including missed salary deferrals and deferrals withheld but not remitted), $43,114.00 in delinquent contributions to the Health Fund, $12,175.98 in delinquent contributions to the Pension Fund, and $20,143.59 in delinquent contributions to the Vacation Fund, plus $7,947.95 in interest;

(b) on behalf of employees represented by Local 764, $11,549.18 in delinquent contributions to the Health Fund, plus $568.37 in interest;

(c) on behalf of employees represented by Local 798, $15,458.41 in delinquent contributions to the Annuity Fund and $10,462.87 in delinquent contributions to the Health Fund, plus $1,289.95 in interest;

(d) on behalf of employees represented by Local 829, $20,775.38 in delinquent contributions to the Annuity Fund and $6,796.33 in delinquent contributions to the Health Fund, plus $1,752.09 in interest;

(e) $55,136.74 in audit costs; and

(f) $321.41 in outstanding delinquencies unrelated to the audit.

53. Despite multiple demands, the Employer has failed and refused to pay the delinquent contributions, interest and audit costs due to the Funds as disclosed by the Audit Report.

54. Upon information and belief, the IATSE Locals have separately pursued collection of some of the delinquent contributions due, but to date the Funds have not received payment of the amounts owed.

55. The above-referenced delinquencies constitute delinquent contributions collectible through this civil action under ERISA. See ERISA §§ 502, 515, 29 U.S.C. §§ 1132(a)(3), 1145.

56. The Employer's failure to make required contributions to the Funds is a violation of the CBAs, the Funds' applicable plan documents and Trust Agreements, and ERISA. Plaintiffs seek enforcement of their rights pursuant to Section 502(a)(3)(B)(i) and (ii) of ERISA, 29 U.S.C. § 1132(a)(3)(B)(i) and (ii), and Section 301 of the LMRA, 29 U.S.C. § 185.

57. As a result of the above-described omissions and breaches of the CBAs by Defendants, Participants of the Funds are being deprived of retirement contributions, vacation contributions and health insurance, to their substantial and irreparable injury.

58. As a result of the above-described omissions, breaches, and violations of agreements and law by Defendants, Plaintiffs (a) may be required to deny employee beneficiaries for whom contributions have not been made the benefits provided under the benefit plans, thereby causing to such employee beneficiaries substantial and irreparable harm, or (b) have been and may in the future be required to provide to employees of Defendants with benefits, notwithstanding Defendants' failure to make the required contributions, thereby reducing the corpus of such Funds and endangering the rights of the employee beneficiaries thereunder on whose behalf contributions are being made, all to their substantial and irreparable injury.

59. Plaintiffs, on their behalf, and on behalf of all employees for whose benefit the Funds were established, have requested Defendants to perform their obligations, but Defendants have refused and failed to perform as herein alleged.

60. Plaintiffs are without an adequate remedy at law and will suffer immediate, continuing and irreparable injury and damage unless Defendants are ordered to specifically perform all their obligations required under the CBA, the Trust Agreements, the Funds' Delinquency Guidelines, ERISA, and/or other applicable law, and are restrained from continuing to refuse to perform as thereunder required.

**FIRST CAUSE OF ACTION**
**(ERISA Delinquent Contributions)**

61. Plaintiffs repeat and reallege all the allegations of Paragraphs 1 through 60 inclusive.

62. By reason of the foregoing, Defendants are jointly and severally liable to Plaintiffs under Section 515 of ERISA, 29 U.S.C. § 1145 for unpaid contributions regarding their employees as follows:

(a) unpaid contributions to the Annuity Fund (including missed salary deferrals and deferrals withheld but not remitted) in the total amount of $74,884.08 through July 24, 2022, along with any additional unpaid contributions as of the date of judgment, pursuant to 29 U.S.C. § 1132(g)(2)(A);

(b) unpaid contributions to the Health Fund in the total amount of $90,896.97 through July 24, 2022, along with any additional unpaid contributions as of the date of judgment, pursuant to 29 U.S.C. § 1132(g)(2)(A);

(c) unpaid contributions to the Penson Fund in the total amount of $12,175.98 through July 24, 2022, along with any additional unpaid contributions as of the date of judgment, pursuant to 29 U.S.C. § 1132(g)(2)(A);

(d) unpaid contributions to the Vacation Fund in the total amount of $20,143.59 through July 24, 2022, along with any additional unpaid contributions as of the date of judgment, pursuant to 29 U.S.C. § 1132(g)(2)(A);

(e) interest on all unpaid contributions in the amount of $11,558.36 through April 5, 2023, plus interest at the rate of prime plus one percent on any

  and all unpaid contributions through the date of the judgment, pursuant to 29 U.S.C. § 1132(g)(2)(B);

(f)  liquidated damages of an amount equal to the greater of twenty percent (20%) of all said unpaid contributions or the interest on the unpaid contributions pursuant to 29 U.S.C. § 1132(g)(2)(C);

(g)  attorneys' fees pursuant to 29 U.S.C. § 1132(g)(2)(D);

(h)  costs of this action pursuant to 29 U.S.C. § 1132(g)(2)(D); and

(i)  all additional attorneys' fees and costs incurred in the enforcement and collection of a judgment in this action.

## SECOND CAUSE OF ACTION
### (LMRA Breach of Contract)

63. Plaintiffs repeat and reallege all the allegations of Paragraphs 1 through 62 inclusive.

64. Defendants are liable to Plaintiffs under LMRA Section 301, 29 U.S.C. § 185 for breaching the CBAs by failing to timely pay benefit fund contributions on behalf of their employees and related sums in the following amounts:

(a)  $198,100.62 in unpaid contributions to the Funds, along with any additional unpaid contributions as of the date of judgment;

(b)  interest on all unpaid contributions through the date of the judgment; and

(c)  liquidated damages of an amount equal to the greater of 20% of the unpaid contributions or the interest on the unpaid contributions.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request entry of a Judgment in favor of Plaintiffs and against Defendants, jointly and severally:

(a) for unpaid contributions to the Annuity Fund (including missed salary deferrals and deferrals withheld but not remitted) in the amount of $74,884.08, along with any additional unpaid contributions as of the date of judgment, pursuant to 29 U.S.C. § 1132(g)(2)(A);

(b) for unpaid contributions to the Health Fund in the amount of $90,896.97, along with any additional unpaid contributions as of the date of judgment, pursuant to 29 U.S.C. § 1132(g)(2)(A);

(c) for unpaid contributions to the Pension Fund in the amount of $12,175.98, along with any additional unpaid contributions as of the date of judgment, pursuant to 29 U.S.C. § 1132(g)(2)(A);

(d) for unpaid contributions to the Vacation Fund in the amount of $20,143.59, along with any additional unpaid contributions as of the date of judgment, pursuant to 29 U.S.C. § 1132(g)(2)(A);

(e) for interest on said unpaid contributions to the Funds in the amount of $11,558.36 calculated as of April 5, 2023, along with interest at the rate of prime plus one percent on any unpaid contributions from that date through the date of the judgment, pursuant to 29 U.S.C. § 1132(g)(2)(B);

(f) for liquidated damages pursuant to 29 U.S.C. § 1132(g)(2)(C);

(g) for audit fees in the amount of $55,136.74 pursuant to the Delinquency Guidelines;

(h) for costs, including reasonable attorneys' fees, incurred in the prosecution of this action as provided in the Trust Agreements, and pursuant to 29 U.S.C. § 1132(g)(2)(D) and incurred in the enforcement and collection of a judgment in

this action;

(i) that Defendants be specifically ordered to pay to Plaintiffs the required contributions due and owing as of the present date, as well as all contributions that may be due and owing as of the date of entry of judgment, together with applicable interest, liquidated damages, costs and fees; and for

(j) such other and further relief as the Court may deem just and proper.

Date: New York, New York
May 26, 2023

Respectfully submitted,

/s/
Sarasvati Spaur
Gillian Costello
SPIVAK LIPTON LLP
1040 Avenue of the Americas, 20th Floor
New York, NY 10018
Ph.: (212) 765-2100
Fax: (212) 765-8954
sspaur@spivaklipton.com
gcostello@spivaklipton.com
*Attorneys for Plaintiffs*